

1  Cameron Mathew Rose
   561 Keystone Ave. Box #257
2  Reno, NV 89503
   775-683-7487
3  jesusmarijuana@unr.edu

```
                    FILED           RECEIVED
            _____ ENTERED    _____ SERVED ON
                        COUNSEL/PARTIES OF RECORD

                    JUL 1 5 2022

                CLERK US DISTRICT COURT
                  DISTRICT OF NEVADA
        BY:_____ DEPUTY
```

Paid Amt $ 402 oc   Date JUL 1 5 2022
NVNVU 5604   Receipt #

4                    UNITED STATES DISTRICT COURT FOR

5                         THE DISTRICT OF NEVADA

6  CAMERON MATHEW ROSE,                    Case No.:

7              Plaintiff,

8  vs.                                     INITIAL COMPLAINT FOR CIVIL CASE
                                           NO JURY REQUESTED
9  DR. DAVID SHINTANI, ET. AL.

10             Defendants.                 3:22-cv-00317

11              **INITIAL COMPLAINT FOR CIVIL CASE**

12         **I.    Parties to This Complaint**

13         **A.  The Plaintiff**

14 **Name:** Cameron Mathew Rose              **State and Zip Code:** Nevada, 89503

15 **Street Address:** 561 Keystone Ave. Box #257   **Telephone #:** (775) 683-7487

16 **City and County:** Reno, Washoe            **Email:** jesusmarijuana@unr.edu

17         **B.   Defendants** (In alphabetical order)

18 **Defendant No. 1**                        **City and County:** Reno, Washoe

19 **Name:** Dr. David Shintani                **State and Zip Code:** Nevada, 89557

20 **Job or Title:** Vice Provost of Undergraduate   **Telephone #:** (775) 784-1740

21 Education                                  **Email:** shintani@unr.edu

22 **Street Address:** 1664 N. Virginia St. Mailstop #005

23 **Defendant No. 2**                        **City and County:** Reno, Washoe

24 **Name:** Dr. Jimmie Manning                **State and Zip Code:** Nevada, 89557

25 **Job or Title:** Department Chair of Communications   **Telephone #:** (775) 784-6839

26 Studies                                    **Email:**  jimmiem@unr.edu

27 **Street Address:** 1664 N. Virginia St. Mailstop #0229

28 **Defendant No. 3**                        **Name:** Dr. Linda Curcio
   PLEADING TITLE - 1

1    **Job or Title:** Associate Dean of Curriculum,                    **State and Zip Code:** Nevada, 89557

2    Assessment, and Student Engagement                                  **Telephone #:** (775) 784-4079

3    **Street Address:** 1664 N. Virginia St. Mailstop #0086             **Email:** lindacurcio@unr.edu

4    **City and County:** Reno, Washoe

5    **Defendant No. 4**                                                 **City and County:** Reno, Washoe

6    **Name:** Geoff Kettling                                            **State and Zip Code:** Nevada, 89557

7    **Job or Title:** Disability Resource Center (DRC)                  **Telephone #:** (775) 682-8728

8    Disability Accommodation Coordinator                                **Email:** kettling@unr.edu

9    **Street Address:** 1664 N. Virginia St. Mailstop #0079

10   **Defendant No. 5**                                                 **City and County:** Reno, Washoe

11   **Name:** Phil Sharp                                                **State and Zip Code:** Nevada, 89557

12   **Job or Title:** Director of Forensics (Debate coach);             **Telephone #:** (775) 784-4035

13   Professor                                                           **Email:** psharp@unr.edu

14   **Street Address:** 1664 N. Virginia St. Mailstop #0229

15   **Defendant No. 6**                                                 **City and County:** Reno, Washoe

16   **Name:** University of Nevada Reno                                 **State and Zip Code:** Nevada, 89557

17   **Street Address**: 1664 N. Virginia St.                            **Telephone #:** (775) 784-1110

18                    **II.    Basis for Jurisdiction: Jurisdiction of Federal Questions**

19   1.   **IS** it a violation of 42 U.S. Code § 12101 (b)(2); the Higher Education Opportunity Act § 104 (Protection of

20        Student Speech and Association Rights) (2)(B)(D)(E) and/or (b)(1); and/or a different jurisdiction such as

21        breach of the University's implied contractual duty, if a university does not follow their own established

22        policies, which are meant to provide clear, strong, and consistent enforceable standards for addressing such

23        things as discrimination against individuals with disabilities, due process rights, student and faculty misconduct,

24        and a plethora of other enforceable standards?

25   2.   **DOES** severe, persistent, and pervasive threats of exclusion from a class and/or debate team, used wantonly and

26        arbitrarily to intimidate a student and cause duress, constitute policy violations under the University

27        Administrative Manual (UAM) 2,040 University Workplace Violence and Bullying Prohibited; and the Nevada

28        System of Higher Education (NSHE) Board of Regents Handbook Title 2 chapter 6 section 2 subsections f

PLEADING TITLE - 2

(dishonesty), l (impermissible use of threats), and s (false accusations); when threats are used under the pretext of Student Code of Conduct (SCC) violations, specifically SCC Section III.B.11 Disorderly Conduct for disruption and interruption of teachings and proceedings, through the claimed act of being "argumentative," when threats are used without a reasonable warning or provocation from the students conduct?

3.  **DID,** Professor Phil Sharp use threats of exclusion from the class and debate team on multiple occasions, using symptoms associated with my disabilities i.e., being argumentative, in a wantonness manner to create a hostile environment from which to learn, in violation of UAM 2,040 and NSHE Handbook Title 2-chapter 6 subsections f, l, and s?

4.  **UNDER** NSHE Handbook Title 4 Chapter 8 Section 13 Policy Against Unlawful Discrimination and Harassment, subsection 3; and UAM 2,040 University Workplace Violence and Bullying Prohibited; did Professor Sharp's repetitive arbitrary use of threats of exclusion under the guise of a SCC violation, and other condescending and demeaning conduct by the professor, constitute "harassment" in that 1) tolerating the offensive conduct became a condition for the educational pursuit and that 2) the conduct was pervasive, severe, and persistent enough that a reasonable person would consider intimidating, hostile, offensive or abusive, used as a means to create a hostile environment in order to deny inclusion?

5.  **UNDER** NSHE Handbook Title 2 chapter 6 section 2 subsection w (unlawful discrimination based on disabilities with educational retaliation) and 42 U.S. Code § 12101 (b)(2); does Professor Sharp's wantonness and arbitrary use of symptoms specifically attributed with my disabilities (behaving as claimed argumentative), when these symptoms were not present, whether using symptoms associated with my disability to present me as a problem in order to exclude me from the debate program amounts to discrimination of my disabilities with retaliation when components of my disability are manipulated into being problematic in order to justify removal from the program where no justification would exist otherwise?

6.  **UNDER** NSHE Handbook Title 2 Chapter 6 section 2 subsections j (professional conduct that the faculty member is unfit) and u (disorderly conduct of a faculty) does storming out of prep during a tournament, provoking conflicts with students during tournaments, years' worth of copious student reviews for being condescending, demeaning, and degrading to students, and being overwhelmed and exasperated with students, constitutes additional policy violations from which a faculty member should be held accountable for their misconduct by the University, but was not thereby permitting a hostile environment to exist?

PLEADING TITLE - 3

7. **WHETHER** under UAM 3,052 Reasonable Accommodations for the Academic Needs of Students with Disabilities, an accommodation was necessary for my disabilities and whether an accommodation by the UNR DRC was averted, despite that I had made several attempts to obtain an accommodation from my coordinator Geoff Kettling, where a reasonable accommodation would have provided the necessary accommodations from which the circumstances could have been prevented or mitigated?

8. **WHETHER** an accommodation under UAM 3,052 was a necessary factor to accommodate my reaction to Professor Sharp's 3rd threat of exclusion, or whether Dr. Jimmie Manning manipulated UAM 3,052 to circumvent holding a professor accountable for their misconduct, by using the lack of an accommodation to treat admitted symptoms associated with my disability of seeming aggressive as a justifiable cause for exclusion where no justification would exist otherwise?

9. **UNDER** the Americans with Disabilities Act (A.D.A) Title 3 Section 36.208 Direct Threat, was my reaction to Professor Sharp's 3rd threat of exclusion, under the circumstances unreasonable, in that through my actions I caused "a significant risk to the health or safety of others," that justification for the removal from the Debate Program by Dr. Manning under the basis that I was a threat to the safety of others, was justifiable?

10. **UNDER** NSHE Handbook Title 2 chapter 6 section 2 subsection w (unlawful discrimination based on disabilities with educational retaliation), and 42 U.S. Code § 12101 (b)(2); and did Dr. Manning discriminate against my disabilities by treating me like "a significant risk to the health or safety of others," simply because I admitted that symptoms associated with my disability make me seem aggressive where my reaction to having been unreasonably threatened was used as a means to ignore Professor Sharp's policy violations, and my conduct then treated as a threat in order to remove me from the debate program, and was the removal from the debate program retaliation for speaking up against Professor Sharp, again in order to provide justification where no justification would exist otherwise?

11. **IS** it cruel and unusual punishment to sanction an individual with disabilities, and discriminative over an individual's disabilities, to sanction them over natural components of their disability and not actual acted upon misconduct, where a person with disabilities could then be continuously guilty of offenses because of their natural disposition caused by ones disabilities?

12. **DID** Dr. Manning slander me by using the claim that I was "a significant risk to the safety of others" to remove me from the Debate Program, when I had not threatened anyone or acted in a threatening manner as no

PLEADING TITLE - 4

1   actionable claim or evidence supportive of the allegation "that I was a threat to others" has been presented,

2   which resulted in my adverse removal from the debate program?

3   13. **DID** the University through Dr. Manning's and Dr. Curcio's method for removing me from the debate program,

4   violate my 5th and 14th Amendment procedural Due Process rights through disregard of enforceable standards

5   such as NSHE Handbook Title 2 Chapter 10 Student Program Dismissal Procedures section 3 subsection b; and

6   UAM 6,502 Academic Standards; by not following established procedural Due Process policies for student

7   removal from a program such as; a review process, a hearing with an advisor present, and that not even a formal

8   complaint was filed under SCC Section III.B.11, SCC section III.B.26, or any other SCC violation with the

9   Dean of Students as is protocol?

10  14. **UNDER** UAM 6,502 Academic Standards, did the University through Dr. Manning and Dr. Curcio,

11  additionally improperly remove me from the Debate Program by going against policy and violate academic

12  integrity standards in that I was graded out of the class with half the course remaining instead of being fully

13  withdrawn and established due process policies followed if I had committed a violation subject to sanction and

14  if the untraditional methods used were done as a means to silence and put an end to the dispute in hopes of no

15  further actions taken?

16  15. **DID** the University breach an expressed contractual duty, by removing me from the debate program through

17  violation of my Due Process rights, when we have an agreed and signed contract of my declaration of intent

18  towards a debate minor, that remains in current standing?

19  16. **DID** the University breach an implied contractual duty during the Fall 2021 semester associated with the class

20  Com 209 Debate and Critical Thinking, by withholding me from participation for 8 weeks of a class, which is

21  approximately half the semester, where normally that many absences would result in an automatic failure of the

22  course, and where this would fall under a violation of the University's own academic integrity standards

23  through giving students grades when the requirements for a class have not all been satisfied, such as

24  participation?

25  17. **DID** the University breach an implied contractual duty through Dr. Shintani's, Dr. Manning's, and Dr. Curcio's

26  blatant disregard to the plethora of enumerated policy violations in this complaint under the premise made by

27  Dr. Shintani that "it is difficult to hold faculty accountable," as justification for permitting policy violation to go

28  unaccounted for and Dr. Manning's and Dr. Curcio's refusal to follow established policies?

PLEADING TITLE - 5

18. **DID** the University through Dr. Shintani, Dr. Manning, and Dr. Curcio, violate The Higher Education Opportunity Act section Part B § 112 (a) (2)(B)(D)(E) and (b)(1), in that the institution failed to abide by its academic program in accordance to educational goals, as a student I was not free from being intimidated, harassed, or discouraged from speaking out or discriminated against, and students should be treated equally and fair, where sanctions were not done objectively or fairly?

19. **AND DID** the University through Dr. Shintani, Dr. Manning, Dr. Curcio, and Professor Sharp violate my civil rights of federally protected activities by using intimidation to deprive me of participating and enjoying the benefits of any program or activity receiving financial assistance, under Title 18 §245 (1)(E)?

### III.    Statement of Facts

**a)    Disability and Enrollment with the University**

1. **That,** I, Cameron Mathew Rose, suffer from manic/depressive Bi-polar disorder, amongst a plethora of other disabilities.

2. **That,** I, Cameron Mathew Rose, also suffer from Complex Post Traumatic Stress Disorder which can also be connected to episodes of mania, manic or being what is also referred to as agitated, amongst other disabilities.

3. **That,** only I know how I am internally feeling, and that others' perceptions of my feelings does not precipitate that my feelings are otherwise.

4. **That,** recognized symptoms associated with mania/manic/being agitated, include but are not limited to: increased energy, activity, or agitation; seeming irritable, argumentative, and aggressive; psychomotor agitation, which is the urge to keep speaking; more talkative than normal; racing thoughts; the inability to let things go; easily distracted; poor impulse control; reduced need for sleep; spats of outbursts; and it is generally used to describe unintentional and purposeless behaviors that result from feelings of inner restlessness.

5. **That,** a bout of mania can last for a single episode, or an episode of mania can last at least one week, present most of the day, nearly every day.

6. **That,** due to symptoms associated with mania it can make it difficult to communicate the way others are able to which is what makes mania a disability, specifically in that I can seem overbearing, loud and aggressive without intent.

7. **That,** I am fully cognitively aware of my disabilities and how they impact myself and others, that I alone am in control of myself, and that I alone am responsible for my actions.

PLEADING TITLE - 6

8. **That,** when symptoms associated with a disability are used to discredit and dismiss an individual as a means to restrict inclusivity or create justification for disciplinary actions, it is discriminative to those like myself with disabilities, when for example, myself or others do not actually have to act "argumentative, aggressive, loud" or other recognized disruptive or unacceptable behaviors in order to be excluded or punished and treated as a threat and problem, where the simply enumeration of unsatisfactory behaviors has been sufficient to restrict individuals with disabilities without the need for proof of unacceptable actions leading to the use of vague generalizations through stereotypes.

9. **That,** because of my natural demeanor due to my disability I have often been perceived as "threatening, aggressive, irritated, loud, or not in control of myself," where no longer do my actions matter, but rather my demeanor alone has been used to present me as a problem in order to justify punishment as if I have acted in threatening and dangerous manners without the need of actual aggressive conduct, a loss of control, or other conducive or unlawful conduct.

10. **That,** to use my natural demeanor due to my disabilities as being problematic would make me continuously guilty of being a threat where my actions would no longer require that I behave threating to be punished which would amount to cruel and unusual punishment in that I am being punished for actions that those without disabilities would not get punished for.

11. **That,** I have been recognized by the Social Security Administration to be disabled with the expressed disabilities and others since I was 15 years old, which began at birth.

12. **That,** as part of the preadmissions process into UNR, I met over the phone with my DRC coordinator Geoff Kettling, and that during the intake process we discussed reasonable accommodations and how my disabilities might need an accommodation.

13. **That,** during this intake assessment I have been granted an accommodation that is still in effect for housing to avoid unnecessary problems with roommates which could lead to unnecessary altercations due to my manic and other disabilities.

14. **That,** an accommodation for classes was determined would be applied if it became necessary because Geoff Kettling was unsure how to accommodate the request for a class in my opinion because he felt apprehensive in granting an accommodation to accommodate what could be construed as permitting inappropriate behaviors which was not my expressed need.

PLEADING TITLE - 7

15. **That,** I have been a student with the University since the start of Fall 2020 semester and transitioned from being chronically homeless prior to my enrollment with the University.

16. **That,** I have remained in school primarily full time and year-round to include spring, summer, and winter semester sessions since the Fall 2020 semester and continue with a 3.5 GPA at the start of my junior year.

17. **And that,** in the course of this time I have not had a single incident where I have had any complaints by any teachers or faculty for interrupting any classes by being "argumentative," or having acted in a manner where I could be considered a threat to a class or any other misconduct where an accommodation would be necessary, or my behaviors addressed, because I understand how to control myself and behave.

   **b)   First Threat, Abrasive Conduct and Other Important Information**

1. **That,** I mentioned immediate interest to participate on the UNR Debate Team during admission into the University and I was directed to and corresponded with Professor Sharp, the Coach of the team, about this interest prior to my first semester on the debate team.

2. **That,** by the Spring 2021 semester, my second semester with the University, I was participating and enrolled in my first ever semester on a debate team after I figured out how to enroll in the class due to some misunderstanding on my part that the participation was actually a class and not an extracurricular activity.

3. **That,** On April 7th, 2021, the first instance of Professor Phillip Sharp threatening me with exclusion from the team and class for being "argumentative" occurred at the end of a zoom class meeting.

4. **That,** a threat of exclusion under the premise of simply claiming one is "argumentative" is itself vague and can be used overbroadly, as was the circumstances in this case.

5. **That,** prior to April 7th, 2021, Professor Sharp had not once needed to request that I stop being disruptive or argumentative in class, had never once requested that I stop talking nor were any other warnings for misconduct made against me.

6. **That,** prior to April 7th, 2021, I had been upfront with Professor Sharp about my disability because I must, and I was cognitive of difficulties that arose relating to my disability and participating in the debate team.

7. **That,** the first difficulty to arise was during a tournament in February 2021 when I was partnered in a tournament with another first year classmate, who after our first round when I tried to express why we lost before we were informed, as I had lost in a similar fashion in our first tournament where I was not trying to make the same mistake twice, but instead I was treated as if I was being hostile, as the student felt the need to

PLEADING TITLE - 8

1    request that I stop yelling at her, at which time we were the only two present in the room because the

2    tournament was online.

8.  **That,** when I responded back, "I am not yelling at you," her exact response was that "I know you're not literally

4    yelling at me."

9.  **That,** from her response and reaction I had enough information to see that my excitableness from my manic

6    made this student feel uncomfortable as if she was in danger even though she was not, where immediately after

7    we were informed that we lost for the exact reason I said, I left in order to bring the issue to the attention of

8    Professor Sharp because I knew this would be the proper way to handle the situation.

10. **That,** afterwards we were simply removed from the tournament as a team by Professor Sharp and that we both

10   participated individually the next day where we both saw success placing in the top of the tournament on that

11   Sunday and medaling in my first tournament, where afterwards nothing further was discussed about what

12   happened.

11. **That,** this was at the time only the second tournament of the semester that we had participated in.

12. **That,** the only other instances where difficulties arose relating to my disability were instances where I stated to

15   Professor Sharp that it seemed from feedback from judges that some rounds I felt I had lost in tournaments was

16   due to my excitableness being taken as aggressive, rude, or even preachy by tournament judges, but never once

17   was it taken as threatening or uncontrolled by a Judge that a tournament was disrupted or where I needed to be

18   removed by tournament moderators from participation or formally warned because of inappropriate conduct.

13. **That,** on the opposite spectrum my excitableness and energy from my disability could also benefit me as being

20   seen by judges as passionate, confident, and knowledgeable which are qualities of a good orator and I believe

21   was instrumental to the success I was having with limited experience.

14. **That,** one of my biggest reasons for wanting to participate on the debate team and tournaments was so that I

23   could practice on being able to communicate better so that my disability wouldn't have as much of an impact on

24   communicating since I am aware how they can cause me problems.

15. **That,** because I have a natural disposition to argue, and have been naturally inclined to arguing since I was a

26   child due to my disability, and due to the benefits, where I believe that the benefits I can get from success in

27   debate would benefit me when applying for graduate law school, is another reason I wanted to participate on the

28   Debate Team.

PLEADING TITLE - 9

16. **That,** being argumentative alone does not necessitate that a problem is being caused, especially in a class which is about learning how to effectively argue, considering the word debate is synonymous with the word argument.

17. **That,** to be argumentative in a problematic and disruptive way, a student's specific actions would need to be a disruption of the actual class caused by arguing in a manner that is unacceptable more than simple participation and trying to work through arguments in class and at times where a disruption can be caused.

18. **That,** immediately prior to the April 7th threat, Professor Sharp gave a particular scathing review with attitude to a practice speech my partner and I gave with no constructive criticism and continued to be abrasive, ornery, and obtuse when we tried to process our arguments we used and understand why he was saying our arguments didn't work.

19. **That,** under the circumstances there is no reason why Professor Sharp on April 7th, should have at the end of class threatened me with exclusion from the class and debate team for being "argumentative as if I was being disruptive" considering immediately thereafter the class ended showing logically that class could not have been disrupted and that this could have been done by dismissing the class except for me with a discussion, but this did not occur.

20. **That,** prior to the threat on April 7th, I was not given a warning or never was I even requested to stop talking or quiet down before Professor Sharp resorted immediately to the threat, showing the wantonness and arbitrary use of the threat.

21. **That,** after the first threat Professor Sharp did not document, request outside assistance, nor have a discussion with me about being "argumentative or disruptive" in the class in order to address the issues that were being claimed to be a problem by the professor.

22. **That,** after the first threat I did file a Title IX student complaint immediately after the class upon confirmation from UNR's own website that "intimidation, bullying, and harassment" under UAM 2,040 were covered offenses which were enumerated as being intolerable and because I fell that a teacher exerting authority unreasonably for no reason through threats of exclusion to intimidate a student from feeling welcome would qualify under these merits.

23. **That,** included in my Title IX complaint, because I felt like the issues helped establish a pattern of Professor Sharp's inactions and actions I mentioned the issue that was left unresolved that I discussed in statements 7-10 above, and brought up an incident in March where during another tournament after a different student simply

PLEADING TITLE - 10

1     asked Professor Sharp if he was going to help with prep, how the professor had a conniption and left the

2     tournament and abandoned the team during prep, which was again online due to the ongoing pandemic.

3 24. **That,** on April 8th, 2021, I was informed in the response from the Title IX office that it was not a Title IX issue,

4     and instead directed to file my complaint with the Academic Concierge, which I promptly filed what I could as

5     the concierge complaint form is restrictive on what can be said through word limits.

6 25. **That,** on April 9th, 2021, I would talk with Provost Dr. David Shintani over the phone for the first time about

7     the issues from the Academic Concierge complaint I filed.

8 26. **That,** after the conversation with Dr. David Shintani, he brought both the Communication's Department Chair

9     Dr. Jimmie Manning and the Associate Dean of the Liberal Arts Department Linda Curcio in via email to help

10     handle the situation, where it was responded that they would arrange to get feedback from Professor Sharp

11     about the situation and discuss the issues with him.

12 27. **That,** after this I am not aware of any further action taken besides it being expressed Phil would not repeat the

13     same behaviors and that the issues were discussed with him.

14 28. **That,** after this correspondence I was not confronted with nor accused of having caused a disruption of any

15     class by being "argumentative or disruptive" nor was any other follow up of this claim taken.

16 29. **That,** under no circumstance is threatening a student with exclusion an act that a professor can just haphazardly

17     throw around.

18 30. **That,** when discussing the issue over the phone with Dr. David Shintani, I made it clear that I was mostly

19     interested in documenting the behavior in case the unnecessary threats continued from Professor Sharp as

20     continued participation in the debate program was vitally important to my educational aspirations as mentioned

21     in statements 14 and 15 above, and how I felt this was being done to prevent that through arbitrary exertion of

22     authority by the professor.

23 31. **That,** also when discussing the issue with Dr. David Shintani it was advised that I should again seek an

24     accommodation with the DRC for the class pertaining to my disability.

25 32. **That,** on April 19th, 2021, I was able to send a message to my DRC coordinator Geoff Kettling to set up a

26     meeting to discuss the issues and my disabilities with Professor Sharp.

27 33. **That,** On April 20th, 2021, Geoff Kettling responded back saying he would arrange a meeting with the 3 of us

28     (Myself, Geoff, and Professor Sharp).

PLEADING TITLE - 11

34. **That,** on April 21st, 2021, I confirmed that this was what I wanted and elaborated more to Geoff Kettling on what my issues were, primarily noting at this time that I have a problem being made into a problem when I haven't caused a problem.

35. **That,** after this no meeting was set up by Geoff Kettling, likely due to the approaching end of the semester interfering with this getting done.

36. **That,** after the threat no other threats or claims of me being argumentative or disruptive were issued for the Spring 2021 semester.

37. **That,** during the final tournament of the semester in May, in my first ever participation in an impromptu style debate tournament I once again made it to the finals and placed with a bronze medal.

38. **That,** all classes and tournaments during this semester were attended by online zoom meetings.

39. **And that,** after learning during the semester that through participation in the Debate Team, a Debate minor was available, I declared my intent for a debate minor under contract with UNR on August 23rd, 2021, and it was approved on August 26th, 2021, and remains in effect at the time of filing.

   **c)   Second Threat and Additional Abrasive Conduct**

1. **That,** during the 2021 Fall semester Professor Sharp's inappropriate behaviors continued and became more pervasive.

2. **That,** the Fall 2021 semester was in person and not online over zoom meetings like the Spring 2021 semester was, but tournaments remained primarily online.

3. **That,** early in the semester during a team practice, Professor Sharp expressed exasperation and a sense of being overwhelmed by me with his first proclamation that "he didn't understand why I wasn't getting it" and "that he didn't know what to do with me," was made.

4. **That,** unique to any class I have taken, Professor Sharp after several weeks into the start of the class mentioned that if we were to have any problems with him to bring the issues up to the Communication's Department Chair Dr. Jimmie Manning and then laughed about how this wouldn't amount to much.

5. **That,** after speeches I made, the critiques by Professor Sharp during practice were at no point productive, constructive, or concerned with providing me instruction on how to improve and instead were used as a means to be condescending, degrading and demeaning in order to intentionally provoke conflict and strife so that I would become deterred from remaining in the class.

PLEADING TITLE - 12

6. **That,** the same cannot be said about my interactions with the Assistant Coach Professor Benjamin Kruger, who had never found it necessary to threaten me with removal, nor scold me for being disruptive, and critiques of speeches were constructive, responsive, and respectful during both semesters and were indicative of a contrary perspective that I was not understanding things as Professor Sharp was constantly expressing.

7. **That,** after a class one day when I expressed excitement about the current semester, Professor Sharp responded in a way I felt was snidely, when he remarked that "I would have no problems if I just cooperated with him and Benjamin Kruger," as if I was somehow being combative with them, and then abruptly ended the conversation, which I felt was a reaction to the complaint I had filed last semester.

8. **That,** in the first tournament of the Fall semester on September 27th, 2021, in my first extemporaneous debate tournament, I once again made the finals, but did not medal in the finals.

9. **That,** of the five tournaments planned for the Fall 2021 semester, all were planned for online meetings except for one which was planned for in-person that I had already expected to miss the online tournament due to a prior planned engagement.

10. **That,** even though I had addressed I would not be able to attend the in-person tournament because of a prior planned engagement, Professor Sharp I feel intentionally became combative and argumentative by making it a point to mention that unvaccinated students, which I was the only unvaccinated student, would not be permitted on this trip and then proceeded to rant about how this was because he "was not comfortable going on a trip with students who were unvaccinated" and how it had nothing to do with policy but his choice, and treated it like he was repulsed by those that have made such a choice.

11. **That,** on an unknown date around the end of September beginning of October, again at the end of class, a second threat of exclusion for being "argumentative as if I was being disruptive," was made by Professor Sharp which I did not document because I wanted to see how the Professor would handle the second of his threats of exclusion, which again occurred without premise nor warning and was not addressed besides the arbitrary threat.

12. **That,** during the final tournament I would get to participate in on October 10th 2021, I was accosted by Professor Sharp for no reason and told "Am I asking for help or am I telling him what to do," and threatened with not being helped simply because I came in to the prep room ready with ideas on how to debate the topic I had been given considering I had knowledge on the topic.

PLEADING TITLE - 13

13. **That,** Professor Sharp's abrasive exertion of authority was again unnecessary and undeserved and shows a continuous pattern of overstepping boundaries and exerting authority arbitrarily.

14. **That,** during this tournament I was the only participant who Professor Sharp was working with as I was the only participant for the team for that tournament.

15. **And that,** at this point, Professor Sharp has not addressed why the vague threats were used nor has he attempted to mediate the proclaimed issues through the assistance of other faculty.

    **d)  Third Threat**

1. **That,** on October 20th, 2021, Professor Sharp for the third time threatened me in the course of six months, for no reason with exclusion from the debate team and class, this time during the middle of class, and again under the vague and overbroad claim that I was "argumentative."

2. **That,** on October 20th, 2021, there was only me, the assistant coach Ben Kruger, the coach Phillip Sharp and one other student in attendance.

3. **That,** prior to the threat, I had been sent off to prep my own practice speech, while the only other student in attendance that day remained in the class to prep her topic and then orated her practice speech.

4. **That,** upon the expiration of prep time, I returned as instructed after the other student had given her speech, at which time she was being critiqued in a nondiscriminatory and constructive manner, and I entered without causing a disruption.

5. **That,** during this time the other student was able to respond and interact with the teachers about the critiques she was being given, as was common practice after as a means to learn from the speech, and was not chastised for participating in a discussion about her speech.

6. **That,** after Professor Sharp and Kruger were done critiquing the other student's speech, it was my turn to do my speech and then be critiqued so that I could work on and become more comfortable with giving speeches.

7. **That,** my topic for the practice speech was "How will the U.S. Supreme Court (SCOTUS) would handle the Texas abortion law changes," in which the overall theme of my argument was that SCOTUS would sit on their hands and do nothing.

8. **That,** through my third argument I presented a correlation to qualified immunity to show a continued pattern, with two other supportive examples of the highest court stalling on major decisions and the domino effect from these inactions.

PLEADING TITLE - 14

9. **That,** after my speech I was first critiqued by Professor Kruger, who praised me on "a remarkable difference from when I first started doing speeches, in that my speeches were more structured and concise."

10. **That,** I was given additional constructive criticisms by Professor Kruger on my speech that was generally taken as having been productive for a practice speech with signs of clear improvement.

11. **That,** after Professor Kruger's response, Professor Sharp provided his feedback which began by initially agreeing with Professor Kruger.

12. **That,** Professor Sharp's response changed after getting to my third argument and no longer was my speech coherent, in fact now nothing of my speech made sense and Professor Sharp began to criticize my speech in an unproductive manner, as there was nothing specific that I had done wrong it was just in general everything I said was wrong because he didn't understand it and thus there wasn't even an attempt at providing constructive feedback at this point.

13. **That,** Professor Sharp continued to then express again how he was overwhelmed and exasperated with how I was not understanding how to make arguments and that I should be understanding how to make an argument at this time with some sort of progress to show for it.

14. **That,** upon hearing that my third argument in particular did not work, I tried to work through it with the professor by first explaining what my argument was in its simplest form since he had expressed that he "didn't understand it," so to see if a simplified version of my argument still made sense.

15. **That,** without asking me to stop talking or any other warning, it is at this time that Professor Sharp for the third time threatened me with being excluded from the class and debate team for being "argumentative."

16. **That,** at this time it is the Professor who is disruptive to the class in that the Professor has not once attempted to discuss any issues with the student, in that the Professor had not made any attempts to discuss the issue outside of class and repeatedly used threats to interrupt the class in order to deny a student an opportunity to work through arguments as the class is meant for, and that because the Professor on multiple occasions has used threats of exclusion as a first resort rather than last resort shows again the professor abusively exerting authority where no need existed in order to cause duress.

17. **That,** without good reason for using a threat of exclusion, which still to this day has not been investigated nor any justification for the threat's provided, that it would be a form of intimidation meant to cause duress to threaten a student with exclusion from a class arbitrarily and that it would be synonymous to "Bullying"

PLEADING TITLE - 15

1   behavior which violates University and NSHE policies were a faculty member to use threats of exclusion

2   without good cause.

3   18. **That,** after being threatened for a third time, given how much time remained in class (45 minutes) and that at

4   this time it was supposed to be my time to receive constructive feedback in which I am able to work through the

5   arguments I presented similar to my peers, that I had enough of Professor Sharp's demeaning, condescending,

6   and intimidating behavior as they are undoubtedly unacceptable, at which point I immediately closed my laptop,

7   stood up and told the Professor "I am tired of being treated like a problem because I am not a problem, and

8   because of this problem it has become a problem, where it seems the only way to resolve the problem is to talk

9   with Administrators because I am done being treated like a problem when I am not a problem," and then I

10   promptly left the classroom in a controlled manic episode because I rationally had the purpose of seeing the

11   unacceptable threats stopped.

12   19. **That,** under the circumstances my behaviors were not unreasonable nor dangerous.

13   20. **And that,** afterwards I immediately emailed the Department Chair Jimmie Manning at 8:04 p.m. the same night

14   of October 20th, 2021, about the issues that had transpired seeking a resolution.

15   **e) Removal from Debate Program**

16   1. **That,** on October 25th, 2021, I finally heard back from Jimmie Manning at which point I was instructed to not

17   return to class and that a meeting would take place before being allowed to return.

18   2. **That,** on October 25th, 2021, because I had not heard from Dr. Manning yet, prior to receiving his message I

19   sent a message to the University's Dean of Students Dr. Lelani Kupo, to bring in outside assistance because I

20   had spoken with before for student financial assistance and had some communication with each other.

21   3. **That,** a meeting with Dr. Jimmie Manning and his secretary took place on October 26th, 2021.

22   4. **That,** from my understanding the meeting was not a hearing but rather a preliminary investigation into the

23   events that had occurred on October 20th, 2021, as no formal complaints had been filed and I was not provided

24   an advisor for the meeting.

25   5. **That,** despite no formal complaints filed, Dr. Manning was acting under the guise that a student had filed a

26   complaint against me for "feeling threatened," that has never been substantiated nor the process as outlined by

27   policy followed if this were true, where Dr. Manning used this generalization as if the class had more than one

28   student in attendance which was contrary to the facts and as a means to treat the meeting as if it was a

PLEADING TITLE - 16

1   disciplinary hearing for me when it was stated as not being an actual disciplinary hearing thus the lack of an

2   accompanying advisor.

3   6. **That,** to use a fictitious complaint to ignore the original issue and create disciplinary action against me for my

4   reaction to being threatened, outside of established policies, to not hold accountable a teacher threatening a

5   student wantonly and arbitrarily would be retaliatory.

6   7. **That,** little to no regard was taken by Dr. Manning towards the fact that the Professor on repeated occasions had

7   threatened me with exclusion and that these threats had no relevance in my reaction despite being the cause.

8   8. **That,** Dr. Manning proclaimed during the meeting that he was "not trying to gaslighting me," but that his initial

9   impression from interviews with the Professor's, was that Professor Sharp was just "being direct with me," as if

10  the Professor was just being curt and forthright.

11  9. **That,** I immediately challenged Dr. Manning's interpretation of Professor Sharp's behavior as being direct by

12  stating, "That threatening a student with exclusion from class for no reason other than to bully a student is not

13  direct," and then asked "If he was just being direct what I had done to be argumentative," to which Dr. Manning

14  has never addressed this issue and as mentioned has treated it as if it was a separate and irrelevant issue to my

15  reaction as being a disturbance to the class for being argumentative has had no basis in why I would be

16  removed.

17  10. **That,** during the meeting when I addressed the previous examples of Professor Sharp's inappropriate behaviors,

18  Dr. Manning expressed that he was not aware of the issues despite having supposedly talked with Professor

19  Sharp in April 2021 over the first use of a threat for no reason, for example I had I mentioned back in April how

20  the Professor had stormed out of a tournament for no reason, to which Dr. Manning's exact response was "I

21  didn't know about that," even though he should have as this should have been addressed in April.

22  11. **That,** during the meeting I also brought up how Professor Sharp has been reviewed by a plethora of students on

23  ratemyprofessor.com with other students stating the same sentiments I was, that Professor Sharp is

24  condescending and demeaning to students and treats teaching students as if it is a burden.

25  12. **That,** in response to my claim that other students were having similar experiences of Professor Sharp, Dr.

26  Manning stated he would "investigate" by soliciting a survey of opinions on the professor.

27  13. **That,** Dr. Manning stated that the only way my response to Professor Sharp's third threat of exclusion would be

28  reasonable, was only if I had an accommodation for my disability, that had been provided by the Disability

PLEADING TITLE - 17

Resource Center, which regarded the threat as being irrelevant, and where I feel that Dr. Manning has manipulated what disability accommodation are used for to treat reasonable reactions under duress as being only reasonable if one has a disability, which is not how accommodations are meant to be used.

14. **That,** an accommodation is meant to help students who have various struggles not have as many difficulties in a class because a teacher is aware of the limitations rather than an excuse to act in ways others wouldn't.

15. **That,** under the circumstances my reaction of becoming intolerant and fed up with being bullied was no different than a reaction of a reasonable person without disabilities would react after having been threatened repeatedly for no reason and aggressively criticized on multiple occasions when intentionally used in order to create a hostile environment, which is why an accommodation should have been irrelevant and shows that Dr. Manning instead used the lack of a disability accommodation to permit impermissible behavior by a professor.

16. **That,** this meeting was audio recorded by Dr. Manning's secretary.

17. **That,** on October 27th, 2021, I specifically requested outside help because I did not feel like Jimmie Manning was as he claims, "looking out for both mine and Professor Sharp's interests," and that he too was intentionally manipulating my disabilities into presenting me as having been a problem by requiring a disability accommodation to justify my reaction to Professor Sharp's unreasonable threat.

18. **That,** on October 27th, 2021, during my request for outside assistance because I felt like Dr. Manning was not looking out for my best interest, Dr. Manning openly stated that because "Professor Sharp did not raise his voice or forcefully move objects" and that these actions "scared people and made them feel threatened" and that it was because of these reasons that I was not allowed to participate in the debate team and that Professor Sharp was not being held accountable, as I was requesting at this time that we both be removed in order to be equal until the issue had been resolved.

19. **That,** on October 27th, 2021, Dr. Manning refused to bring in outside assistance despite my request.

20. **That,** on October 27th, 2021, due to my concerns with how Dr. Manning was handling the situation I again messaged the Dean of Students Dr. Kupo and was able to set up a meeting for October 28th, 2021, to discuss what was clearly becoming my improper removal from the debate team relating to the events of October 20th, 2021.

21. **That,** on October 27th, 2021, I sent a message to both Dr. Jimmie Manning and Dr. Linda Curcio, inviting them to participate in the meeting with the Dean of Students, to which both did not attend or respond.

PLEADING TITLE - 18

22. **That,** instead on the early morning hours of October 28th, 2021, Dr. Manning sent me a formal email declaring my removal from the debate team, declaring that "by my own admission, I enacted violent behavior in the classroom and in front of my team," as justification for removal without any hearing, and prior to my meeting with the Dean of Students, where the justification that because no accommodation was made by the Disability Resource Center that his hands were tied pertaining to the "classroom incident."

23. **That,** Dr. Linda Curcio was also claimed by Dr. Manning to have made the impromptu decision to remove me from the debate team despite that myself and Dr. Curcio have never formally communicated between each other.

24. **That,** in Dr. Manning's official email about the debate team removal, it was determined because I had "met all class requirements," that I would be removed from the class but still allowed to finish the last 3 of 4 written briefs and to turn them in to Professor Kruger, at which point I would receive a grade and be done with the debate team despite this being contrary to established policy for a student removed from a class or program for behavioral reasons.

25. **That,** in order for the removal from the debate team to be authorized, Dr. Manning presented it as the only thing necessary was to get approval from another Dean, which Dr. Manning used Dr. Curcio for, who without getting all the information she could about the situation, Dr. Curcio is claimed to have approved the removal even though both were making a decision without going through established procedures, as the removal was not enumerated by any mentioned policy from which actions were taken under.

26. **That,** on October 28th, 2021, prior to my meeting with the Dean of Students, I received a message checking in on me from my DRC coordinator Geoff Kettling because of being contacted by Dr. Manning about an accommodation the day before.

27. **That,** myself and Geoff Kettling discussed the issues that had gone on and both agreed that this was not a situation where a disability accommodation was meant to be used and especially after I expressed how I felt Dr. Manning was manipulating the accommodations to ignore the impermissible behaviors of a professor under his supervision.

28. **That,** during my meeting with the Dean of Students, Dr. Kupo even noted the peculiarity that policies for not only the removal from a program but also that a claim of a student complaint was never filed for feeling threatened, as it would be her office that would handle such circumstances and not Dr. Manning nor Dr. Curcio.

PLEADING TITLE - 19

29. **That,** during the meeting the Dean of Students she said she would bring this to the attention of a Provost because the circumstances were out of her control.

30. **That,** because I had prior communication with Provost Shintani, this was who Dr. Kupo would speak with in the Academic Concierge office to keep consistency.

31. **That,** it was also discussed that Dr. Kupo would talk with my DRC coordinator about the issues being related to a supposed accommodation related to my disabilities.

32. **That,** on November 2nd, 2021, I was emailed by Geoff Kettling informing me that he and the Dean both agreed that I needed to handle the situation through the provost office.

33. **That,** due to a prior planned engagement I stopped dealing with the situation until November 11th, because it was becoming clear that the situation was not being handled properly nor would the issues be resolved.

34. **That,** on November 11th, 2021, I emailed my DRC coordinator and Dr. Kupo informing them that this issue was affecting my other classes, that it was ruining school for me because they were not following their own "core values," and that I felt I was left with only one option which was to sue the University and those involved.

35. **That,** a meeting for November 19th, 2021, was set up to meet with both the Dr. Kupo and my DRC coordinator because I had not followed through with the complaint to the provost due to the stresses and lack of faith in a process where the process wasn't being followed any ways and I was jumping through hoops for no reason.

36. **That,** by the meeting on November 19th, 2021, I had become so depressed and stressed by the situation that my perspective was that "If you want to call me a threat and punish me like I am a threat then fully punish me as a threat which includes expulsion because claiming someone is a threat to others is not a minor accusation that can be just tossed around like it is a minor issue."

37. **That,** it is also at this time that while I had originally stated that I could do the 3 briefs that remained for the course, I had since become convinced that this was a sign of me accepting the decision as by completing the briefs, I was complying with being graded out and removed from the class as I was saying would happen and that because of this being against policy standards for a program removal that I could not abide by it.

38. **That,** I feel the Dr. Kupo became estranged from the situation and with me after this reaction as I have had no further correspondence about the issue from her since this meeting.

39. **That,** after the meeting I did again file a complaint with the academic concierge office as had been requested and again met a restricted process.

PLEADING TITLE - 20

40. **That,** in part due to the holidays, I did not hear back from Provost Shintani until December at which point there was no point trying to get to participate in the class for that semester as everything that would be associated with the class was done.

41. **That,** when talking with Provost Shintani over the phone, when it came to my expectation that Professor Sharp be held accountable for his behaviors his exact response was, "That it is really difficult to hold faculty accountable," to which I acknowledge and said that I understood this and that my response back was "that this is what policies were meant for."

42. **That,** it is due to Provost Shintani's and others refusal to follow policies that the issues have been allowed to occur because by ignoring policies students no longer have protections and that this creates an environment where harassment, intimidation and inequality can foster.

43. **That,** during my conversation with Provost Shintani I mentioned both my sentiments that I mentioned to the Dr. Kupo and my DRC coordinator in that I felt that policies were not being followed, that I don't take being called a threat lightly where if this is the case I should be expelled from the University, and that I was not acceptive of just being graded out and removed from the class.

44. **That,** pertaining to my dissatisfaction with how I was being graded out, Provost Shintani's response was sent on December 13th, 2021, that I needed to file an improper withdrawal form in order to have the class removed, which I did not do because I did not feel the form would have been approved given it was being treated like disciplinary actions of which would be considered my fault and at which point I would not be eligible for removal under the circumstances as an improper withdrawal can not be done in place of a sanction from a class that has not been ruled in the students favor.

45. **That,** after my phone discussion with Provost Shintani no course of action was taken despite that I had followed through as requested.

46. **That,** after December 13th, 2021, I have not had any more correspondence with Provost Shintani regarding the issues despite that on January 4th, 2021, I sent a detailed email to several faculty members who are part of my appropriate advisors addressing how the vaccine mandate was no longer a potential prevention to my continued studies and that because of this it was important to resolve the issues from the previous semester.

47. **That,** at the end of the semester despite missing half of the semester and not turning in 3 of the graded briefs I was given a B+.

PLEADING TITLE - 21

48. **That,** during winter break I attempted to enroll and participate in the Fall 2022 debate program but was removed before the term started by Dr. Manning where on January 13th, 2021, he stated that I had been removed for "my own admission of violating the debate team code of conduct."

49. **That,** I was emailed on January 13th, 2021, by Dr. Manning informing me that I could still complete my debate minor despite that part of the requirement for a debate minor is participation in the debate team, which I do not feel allows me to get the education I am pursuing.

50. **That,** it is not a reasonable accommodation to remove a student with a disability when they have not acted in a manner which justifies their removal by offering the ability to continue the minor.

51. **That,** I do still want to obtain a debate minor but that not being able to participate in the full debate minor is unacceptable in my opinion as participation in the debate program is where all the experience and education comes from and is under the contract what is required for the fulfillment of a debate minor.

52. **That,** it is not until January 18th, 2022, that Dr. Manning finally sends out an email pertaining to the survey that he stated he would do, as claimed in statement 12 of this section, which I did not participate in and which no response towards Professor Sharp's behaviors has been detailed to me about the results of the survey and other student's responses relating to Professor Sharp's condescending, demeaning, and degrading acts towards students.

53. **And that,** as of the filing of this complaint I remain under contract with the University for a debate minor and all discourse regarding the impermissible threats used by Professor Sharp have not been investigated.

**f)    Summary**

1. **That,** I Cameron Mathew Rose, do suffer from Manic/Depressive Bi-polar disorder and as part of my disability I am often viewed as behaving "argumentative, aggressive, and without intention of purpose," despite my actions showing that I am in full control of myself.

2. **That,** on April 7th, 2021, an unspecified date during the Fall 2022 semester, and again on October 20th, 2021, Professor Sharp threatened me with exclusion from the class and debate team under the vague and overbroad accusation that I was being "argumentative."

3. **That,** prior to and after the threats at no point does Professor Sharp ask to discuss the issue after class, address with other faculty the issues he claimed in class, nor does he even provide warning before resorting to threats of exclusion.

PLEADING TITLE - 22

4. **That,** a class about learning how to debate is a class about learning how to argue, and that in order for a student to be "argumentative" a student must have acted in a way that is truly disruptive of the class and the teacher must address the issue in a civilized manner without an immediate resort to exclusion or public scorning.

5. **That,** Professor Sharp on multiple other occasions has additionally behaved inappropriately, such as storming out of tournaments, additionally using his authority arbitrarily to undermine me during a tournament, and has a plethora of public student reviews where the professor's conduct is described as condescending, demeaning, and degrading of students, which the University refuses to address, which has permitted an atmosphere where harassment, intimidation, and other such recognized inappropriate conduct can persist and foster.

6. **That,** after a third threat of exclusion by Professor Sharp on October 20th, 2021, I had enough of being bullied by the Professor where I could no longer tolerate the offensive conduct to continue as part of my educational pursuits, when it pertained to something that is vitally important towards my educational aspirations and pursuits, that I felt was intentionally hostile through intimidation from the Professor's abuse of authority as a means to cause duress, where I expressed that I was done being treated as a problem for no reason and then promptly left the classroom, from which I have been declared slanderously, "a threat to the safety of others" through this reaction in order to justify my removal from the debate team by Dr. Manning without any threats or actual threating conduct to support the allegations.

7. **That,** my reaction was in response to being unjustifiably threatened with exclusion on multiple occasions and other abrasive conduct by the Professor, instead the threat has been treated as an irrelevant factor when considering the appropriateness of my reaction and it was determined by Dr. Manning that because I admitted that my because of my disability I am often perceived as aggressive, that because of this, the only way my behavior would be considered acceptable would be if I had a disability accommodation to support the way I reacted from the Disability Resource Center.

8. **That,** on three occasions; during initial admission, after the first threat and after the third threat; I did in fact discuss with my DRC coordinator Geoff Kettling about getting an accommodation for my disability and have received a housing accommodation under similar reasons but have been denied an accommodation for classes.

9. **That,** I was not removed from the debate team by the established policies that have been created for removal of a program and a sanction of a student where the University is in violation of my Due Process rights due to the disregard of established policies.

PLEADING TITLE - 23

10. **That,** no formal cause for removal under any University policy was provided with explicit detail of where the policy exists, what behavior I did that violated the policy, nor any other formal declaration of a SCC violation.

11. **That,** rather a plethora of clearly established policies have been ignored which has permitted the hostile environment to exist without recourse except to any students with discrepancies which does not promote a safe learning environment.

12. **That,** the University is under contract for a minor degree in debate where one of the prerequisites for a debate minor is participation in the debate team which I am being unfairly excluded from and denies me the opportunity to enjoy the full benefits of the degree I am working towards without an accommodation without participation when I have not acted in an irrational or irresponsible manner.

13. **That,** the University was under contract for the Fall 2021 semester and did not meet their contractual and educational obligations through my improper removal from the debate program without just cause.

14. **That,** the willful disregard of Dr. Linda Curcio in obtaining more information than just the words of Dr. Manning without supportive policy contributed to the removal from the Debate Program without Due Process.

15. **That,** Dr. Shintani's justification that "it is difficult to hold faculty accountable" and blatant refusal to abide by policy created an unequal environment where faculty can go unaccountable for their actions.

16. **And that,** as of this point the University has not taken any other action or purposely investigated the threats for the misconduct that has occurred and instead I remain excluded from the debate program because of the willful negligence of faculty to protect students from environments where intimidating, hostile, offensive or abusive conduct by permitting such conduct by faculty without redress to grievances.

### IV.    Requested Relief

1. My primary reason for filing this civil suit is so that I can resume participation with the debate team, including debate tournaments, and other debate program related functions to include the completion of a Debate minor should I complete the associated requirements for obtaining a debate minor without having to be subject to discrimination at the behest of the acting professor.

2. I believe that I should be recompensated for a class I did not properly get to take, and the fictitious grade removed from my record as I was improperly removed from the class and did not withdrawal from the class, where I would need to retake the course due to this improper withdraw which should be covered by the University due to the improper withdrawal from the class that they caused.

PLEADING TITLE - 24

3. That those who have shown a clear disdain for the University's core goals and values, to include integrity, community, anti-bullying tolerance and many others, be replaced so that those who do have the University's core goals in mind can be brought in to further the University objectives.

4. And, given all the dedication and hard work I have had to put in to protect my rights, I feel given my capabilities I should be commended and not condemned as I have, and as such be rewarded for my efforts and personal fortitude through a scholarship so that I can continue my educational pursuits without limitations and be supported for my diligence.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address, where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____                        _____

Date of Signing                                        Signature of Plaintiff

                                                       _____

                                                       Printed Name of Plaintiff

PLEADING TITLE - 25